### STEPHEN M. GORTON, Respondent, *v.* THE ERIE RAILWAY COMPANY, Appellant.

It is the clear duty of a person as he comes near to and upon a railroad crossing, to use all proper precautions to avoid injury, and the least he can do is to look in both directions. If he does not do so, and this omission contributes to his injury, he is guilty of such negligence as will bar his recovery, notwithstanding the negligence of those in charge of the train in omitting to sound the whistle or ring the bell.

(Argued May 29th; decided June 6th, 1871.)

APPEAL from the judgment of the late General Term of the Supreme Court, in the fifth judicial district, affirming the judgment of the Circuit in favor of the plaintiff.

This action was brought to recover for personal injuries sustained by the plaintiff, as well as injuries to his property, by reason of having been struck down by one of the defendant's locomotives while he was attempting to cross the defendant's railroad in the town of Corning, Steuben county. The plaintiff was familiar with the crossing, and knew that a train was liable to pass at that time. The plaintiff, although the view was uninterrupted for a long distance, did not look up and down the track; had he done so, he might have avoided the accident. Evidence was given showing that no bell was rung, nor whistle sounded as the train approached the crossing. The material evidence is stated in the opinion.

*G. M. Diven,* for the appellant. On the question of negligence, *Ernst* v. *H. R. R. R. Co.* (39 N. Y., 47, 68) ; *Beisiegel* v. *N. Y. C. R. R. Co.* (34 N. Y., 625) ; *Havens* v. *Erie R. R. Co.* (41 N. Y., 298, 299). On the question of intoxication, *Ernst* v. *H. R. R. R. Co.* (34 How., 110) ; 35 N. Y., 21 ; *Button* v. *H. R. R. R. Co.* (18 N. Y., 248) ; *Ager* v. *City of Lowell* (3 Allen, 402, 406) ; S. & R. on Negligence, §§ 45, 417, note 1.

*Brown & Graves,* for the respondent. The finding of the jury upon questions of fact is conclusive. (14 N. Y., 310 ; 13 N. Y., 533 ; 36 How., 84.) Former declarations must not only relate to the issue, but must be matters of fact, and not merely a former opinion of the witness. (*Holmes* v. *Anderson,* 18 Barb., 420 ; *Eltin* v. *Larkins,* 5 Carr. & Payne, 385 ; 1 Cow. & Hill's Notes, 727, 772 ; 1 Green. Ev., 586 ; *Teall* v. *Borden,* 40 Barb., 137.) The question of negligence is one for the jury, where there is any conflict of testimony upon that point. (39 N. Y., 68 ; 37 N. Y., 287 ; 36 N. Y., 132 ; 35 N. Y., 10 ; 13 N. Y., 533 ; 26 How., 177 ; 23 How., 168 ; 36 How., 84 ; 30 How., 219 ; 40 Barb., 193 ; Starker's Ev., 2d vol., 973.) On the question of intoxication, Stark. Ev., 3d vol., 496 ; *Hart* v. *Newland* (3 Hawks., 122, 123) ; *United States* v. *Jones* (1 Wash. C. C. R., 372) ; *Haley* v. *Earle* (30

N. Y., 208); Green. on Ev., 70, § 52; 584, § 448; Phil. &
Am. on Ev., 909, 910; 1 E. D. Smith, 271. On the question
of the rate of speed, *Hosley* v. *Black* (28 N. Y., 438); 26
How., 97; 1 E. D. Smith, 271; *Kelsey* v. *Barney* (12 N. Y.,
425); *Johnson* v. *Hudson R. R. R. Co.* (20 N. Y., 66);
affirming S. C. in 6 Duer, 633, and disapproving, *Brand* v.
*S. & T. R. R. Co.* (8 Barb., 368); *Ernst* v. *H. R. R. R. Co.*
(39 N. Y., 67); *Harty* v. *C. R. R. Co.* (42 N. Y., 472).

ALLEN, J. At the close of the evidence on the part of the
plaintiff, the defendant moved that the plaintiff be nonsuited,
upon the ground that he was shown to have been negligent,
in approaching as well as in crossing the railroad track; that
is, that the plaintiff was not wholly without fault, but that
the injury was in part attributable to his own negligence and
want of care.

Evidence had been given tending very strongly to show,
that as the train of cars approached the road crossing, the
bell upon the locomotive was not rung or the whistle sounded,
as required by statute, and that no signal of the approaching
train was given by the persons in charge. In the absence of
proof of any negligence or other fault on the part of the plain-
tiff contributing to the injury, this would have authorized a
verdict for the plaintiff.

The omission to ring the bell, or sound the whistle, or give
other signal, to warn persons who might be upon the high-
way, in the vicinity of the intersection of the railroad track
with the public traveled road, of the approach of the train,
was, *per se*, negligent, subjecting the defendant to liability
for all damages that might accrue to any one by reason of
such omission.

The highway crossed the railroad at an acute angle, and the
plaintiff was moving along the road and across the railroad in
a south-easterly direction, approaching the railroad from the
north-west, and the colliding train of cars approached from the
west, on the southernmost of the two railroad tracks. The
course of the railroad at that point was in a direct line both

east and west, and the plaintiff testified that when he got on
to the track there was nothing to prevent him from looking
both east and west; that is, that there was nothing, as he
approached and reached the railroad track, to intercept or
obstruct his view, or prevent his seeing the approaching train
had he looked in that direction; that the space between the
two tracks was three or four feet; that when he drove up to
the rail (that is, to the north rail) he made no effort to look
west to see whether a train was coming; that he did not try
to look west at that time. Another of the witnesses testified
that some years before he had come direct to the track when
a train of cars going east had passed, and that he supposed he
could have seen a mile up the road, if he had looked, but he
was not paying attention and came near being caught.

Dr. Graves, the attending physician, and a witness for the
plaintiff, had just crossed the railroad from the south, and was
sitting in his wagon by the roadside, some twelve or fifteen
rods north-westerly from the railroad crossing, when plaintiff
passed him going toward the crossing. He had seen the
coming train as he approached the railroad from the south,
and he saw it as he was crossing the railroad, and it was then
just going into or coming out of a bridge some distance from
the road crossing. There was no doubt, upon the evidence
given by the plaintiff and his witnesses, that had he looked
to the west, as he drew near the railroad, he could have seen
the train of cars approaching from the west and avoided the
collision. There was no proof of, or attempt to prove any
obstruction or hindrance to the view westward along the line
of the road, or that a train of cars coming from that direc-
tion was not in plain sight for a long distance. Dr. Graves,
and a Mr. Goff, with whom the doctor was conversing, when
the plaintiff passed them on the road, saw the train from
their position on the road before it reached the crossing, and
testified that it was in sight from Rowley's crossing, which is
some distance west of the crossing at which the plaintiff
received the injury complained of. Mr. Goff, who lives at
that place, testified, that a person near to the western bound

(that is the northern)track , could see the track westward to the culvert bridge; that he could see up a mile and a quarter, he thought, and no trouble about it. It was the clear duty of the plaintiff as he came near to, and upon the railroad track, to use all proper precautions to avoid injury, and the least that he could do was to look in both directions.

It is not imposing. an onerous duty upon the traveler crossing a railroad in broad daylight, over which trains of cars were frequently passing, and are liable to pass at any time, to make use of the most common and lowest degree of observation and care, and to cast his eyes in both directions, and in every direction, from which danger may be apprehended. He may not shut his eyes and stop his ears, and rush on regardless of the peril, and hold the railroad company as the insurer of his life, not only against the acts of its servants, but against his own suicidal negligence. The doctrine has been declared by this court, and reaffirmed, that a traveler approaching a railroad track is bound to use his eyes and ears so far as there is an opportunity, and when, by the use of those senses, danger may be avoided, notwithstanding the neglect of the railroad servants to give signals, the omission of the plaintiff to use his senses and avoid the danger, is concurring negligence, entitling the defendant to a nonsuit. (*Ernst* v. *H. R. R. R. Co.*, 35 N. Y., 9; S. C., 39 N. Y., 61; *Beisiegel* v. *N. Y. C. R. R.* 34 N. Y., 625; *Havens* v. *Erie Railway Co.*, 41 N. Y., 296.) There was no conflicting evidence upon this point. There was a conflict as to the existence of objects obstructing the view of a train approaching from the west, at points on the highway, between the railroad and Goff's house, and up to within from two to four rods of the railroad, and the evidence upon that subject presented a fair question for the jury. But these obstacles, if they existed and hid from view the railroad and approaching trains to the extent claimed, did not relieve the plaintiff from the duty of looking for an eastward bound train at the first opportunity, but rather rendered a cautious approach to the crossing the more necessary. Upon the undisputed evidence,

that if the plaintiff had looked to the west, as he approached and reached the north track of the railroad, he could have seen the approaching train, and that he did not look, he should have been nonsuited. This may be explained upon another trial, but upon this record, the judgment should be reversed and a new trial granted, costs to abide event.

All agree except RAPALLO, J., who was not present at the argument.

Judgment reversed.