Andrews, J.
The judge, on the trial, allowed the plain- ■ tiff to testify that, at the crossing where the injury happened, it had been the custom of the railroad company to keep a flagman, and that at the time of the injury in question there was no flagman there. The plaintiff crossed the railroad at this point frequently, and had seen the flagman at 1ns post. The proof as to the flagman was objected to by the defend-, ant, but it was admitted by the judge, as a circumstance bearing upon the plaintiff’s, negligence, and in his charge he stated to the jury that the evidence as to the flagman was only pertinent upon the point whether the plaintiff paid that attention that he should have paid in approaching the crossing. Upon the first trial of the case the same evidence was admitted as bearing upon the negligence of the defendant. The General Term reversed the judgment' entered upon the verdict then obtained, on the ground.that, under the circumstances of the case and in view of the relation in -which the defendant stood to the Rensselaer and Saratoga Railroad Company, whose- track it was using at the time of the accident,, the absence of the flagman from his customary place was not attributable to any negligence on the part of the defendant, and was not a circumstance which could legitimately be considered in determining its liability. The question now arises whether this evidence is admissible as tending to support the issue, which the plaintiff was bound to maintain, that he was free from fault and that there was no negligence on his part contributing to the injury. The injury for which the plaintiff brings his action must have been caused solely by the neo-licence of the defendant, or he cannot recover. If the plaintiff’s negligence concurred with that of the defendant, and was an element in producing the injury, he is remediless. He cannot cast upon another the responsibility of an event, which, except for his own co-operating negligence, would *471 not have happened. It does not help him, although the greater blame may attach to the defendant. The law does not undertake, when both parties have been negligent, to measure the degree of the negligence óf each, nor will it allow a recovery by the party least in fault against the other. The defendant, in running its train, and the plaintiff, in using the highway, were each engaged in the exercise of a lawful right. They had the common right of passage over it, and each was bound to use reasonable and ordinary care to avoid a collision. Ordinary care is defined to be that degree of care which a prudent person would be likely to exercise under given circumstances, but the definition is certainly very vague, and, in an action for damages for a personal injury, alleged to have been occasioned by the negligence of another, it often happens that the line -which separates actionable negligence and conduct consistent with ordinary care, is, in a given case, so indistinct, and the question is involved in so many complexities from the varieties of facts to be considered and the difficulty in clearly comprehending the situation of the parties, that a conclusion is reached only with great doubt and hesitation, and the fact is usually to be found by the jury, under such general instructions as to the law as the court may be able to give. But, in respect to a person traveling in a highway, which is crossed by a railway, it has been settled, by a series of adjudications in this State, that he is bound, on approaching the crossing, to look and listen, if by so doing he can discover the proximity of a moving train, and that the omission to do so is an omission of ordinary care, which will prevent his recovering for an injury which might have been avoided if he had used his faculties of sight and hearing. (Gorton v. The Erie Railway Co., 45 N. Y., 664, and cases cited; Davis v. N. Y. C. and H. R. R. R. Co., 47 id., 400.) The evidence in respect to the flagman, which the plaintiff was permitted to give, must have been admitted upon the theory that he was entitled to construe the absence of the flagman from his customary place as an indication that no train was approaching, and was excused from exercising *472 that degree of vigilance in looking up and down the track to discover it, which otherwise would have been required of him. There is no ground for imputing any negligence to the plaintiff upon the evidence in the case, unless he omitted to look for the approaching train before he crossed the railway, or undertook to cross the track in advance of the train after seeing it.
The law does not make it the duty of a railroad company to place a flagman at .street crossings to warn travelers. (Beisiegel's Case, 40 N. Y., 9.) It may do so for that purpose, or for the protection of its trains or passengers. If it does so, the duty is voluntarily assumed, and may be abandoned at any time; and a mere failure to perform a self-imposed duty is not, as was said by Welles, J., in Shelton v. London and North-western Railway Company (L. R. [2 C. P.], 631), actionable negligence. The law does impose upon a railroad company the duty of making a signal on approaching a highway crossing. But it has been held in several cases that a traveler on the highway is not justified in omitting to look and listen for approaching trains at railroad crossings, because the company omit to ring the bell or sound the whistle. (Wilcox v. Rome, W. and O. R. R. Co., 39 N. Y., 358; Havens v. The Erie Railway Co., 41 id., 296; Baxter v. Troy and Boston R. R. Co., 41 id., 502; Gorton v. Erie Railway Co., 45 id., 660.) His duty to keep his faculties alert, and look and listen, does hot all depend upon the fact whether the railroad company does or does not perform its duty, in giving the statutory signals. A fortiori he cannot relax his vigilance or omit the use of his senses, because a railroad company discontinues a precaution self-imposed, and which it owed no duty to the traveler to continue. The plaintiff testified that the “ flagman was always there.” His absence at this time may have been from neglect of duty or because the company had changed its policy in respect to keeping one. The plaintiff had no right to interpret his absence as an assurance of safety. The rule as established in this State requires a traveler to look before he crosses a railroad track, for approaching *473 trains, and he is not excused from the charge of negligence if he omits it and injury results from such omission. He cannot be allowed to say that he was misled, by trusting to other appearances, and was thereby excused from using the most obvious and easy means of ascertaining the truth. The existence of the track is a warning of danger. The doctrine stated does not impose upon men a rule of conduct difficult to be understood, or inconsistent with their ordinary habits. It is reasonable that men should be on the lookout for danger under such circumstances, and it is in accordance with experience that prudent men do, before crossing a railway, look and listen for signs of danger.
The evidence as to the flagman was, I think, irrelevant for the purpose for which it was received, and for the error in admitting it the judgment should be reversed.
All concur.
Judgment reversed.