Weight, J.
It may be assumed that the signals were not given as the train approached the crossing. The statute, 69 Ohio L. 49, requires that whistle and bell shall be used, from eighty to oue hundred rods from the crossing, the bell to continue ringing until the road is passed. If these injunctions are not complied with, the statute provides that the company shall be liable in damages to any person in *72 jured “ by the neglect or act of said engineer or person in charge of the engine,” %. e. in failing to give the signals.
It is evident from this language that the failure to give signals must have occasioned the accident, that is, must have been the proximate cause of it before recovery can be had. The injury must happen “ by neglect ” of the engineer. If it occurred from some other cause, liability can not arise therefor, under that statute. Indeed, this statutory duty is not different in the responsibility it imposes upon railroad companies from that arising under the common law. Railroads must be careful. If they neglect this duty and such neglect occasions damage, they are responsible. But, though they may be negligent in some degree, if no damage arises, no liability exists. That is, if the injury complained of was not brought about by the negligence in question, but by something else not chargeable to the company, they can not be held.
Before, therefore, plaintiff can recover, because signals were not given, he must cause it to appear that this failure of duty brought about the disaster; for if his own imprudence was the moving cause, he can not maintain his action, although the company may not have observed the provisions of the statute.
The law is thus stated in “Wharton on Negligence, § 884 : “ Where a person knowingly about to cross a railroad track may have an unobstructed view of the railroad, so as to know of the approach of a train a sufficient time to clearly avoid any injury from it, lie can not, as a matter of law, recover, although the railroad company may have been also negligent, or have neglected to perform a statutory requirement.” “Wharton elaborately collects the authorities that sustain the text.
We think the law must now be considered as well settled, that the traveler approaching a crossing, must be upon the lookout for danger. Ordinary care requires that he must look and listen to see if a train is in the vicinity, and if ho fails in this, it is not merely evidence of negligence to be considered by the jury, it is itself such negligence as *73 will prevent a recovery. Gorten v. Erie R. R. Co., 45 N. Y. 660; Ernst v. H. R. R. Co., 35 N. Y. 9, and 39 N. Y. 61; Beisiegel v. N. Y. C. R. R., 34 N. Y. 625; Havens v. Erie R. R., 41 N. Y. 296; Wilcox v. Rome & W. R. R., 39 N. Y. 358; Artz v. C. R. I. & P. R. R., 34 Iowa, 153; Stevens v. Railroad, 18 N. Y. 422; Reynolds v. Hinchman, 32 Iowa, 146; G. & W. R. R. v. Loomis, 13 Ill. 548; Davis v. Railroad, 47 N. Y. 400; Mitchell Acler v. N. Y. C. & H. R. R., 64 N. Y. 655; 58 N. Y. 248.
Counsel for the railroad company asked the court to charge the jury as follows :
1. “If the plaintiff as he passed Bently’s house and approached near to the iron track, did not look eastward along the railroad to discover if a train was approaching, and drove his horse upon the track without so looking eastward, that would be evidence of negligence upon his part, and sufficient to justify the jury in rendering a verdict against him.” The court gave the charge, all but the concluding sentence “ and sufficient to justify the jury in rendering a verdict against him.”
The evidence is clear, that Rathgeb might have seen the train at any point less than 300 feet from the crossing, until he reached it, and seen it in time to have avoided a collision. Although he says he was near-sighted, still he stated that he could have seen a train for a distance of fifty rods, and his defect of vision was not such as to vary the principle.
Being able to see, therefore, and the opportunity of seeing being presented, his failure to discover or to be aware of the approaching cars, we think, was not only evidence of negligence, but negligence itself, and sufficient to justify a verdict against him. And in, other parts of the charge, the court declined to say that the positive duty of the plaintiff was to look up along the track, but left it to the jury to determine whether it was incumbent upon him to do so or not. We think such directions do not meet the requirements of the case. The l’ule should be laid down in such clear terms that there can *74 be no mistake in its application. This case is really disposed of by that of Railroad v. Elliott, 28 Ohio St. 340. In the Cleveland C. & C. R. R. v. Crawford, 24 Ohio St. 631, the first clause of the syllabus is, “ Ordinary prudence re-, quires that a person in the full enjoyment of the faculties of hearing and seeing, before attempting to pass over a known railroad crossing, should use them for the purpose of discovering and avoiding danger from an approaching train ; and the omission to do so, without a reasonable excuse, therefore, is negligence, and will defeat an action by such person for an injury to which such negligence contributed.”
In this case the court say that as a general rule the question of contributory negligence is a mixed question of law and fact, and proceed to observe, “ Where, however, all the material facts in the case are undisputed, or are found by the jury, and admit of no rational inference but that of negligence, or that of due care, it is, no doubt, the duty of the court to say to the jury that, as matter of law, the facts so appearing amount to negligence, or due care, as the case maybe; as it would be the duty of the court to determine, as a question of law, what judgment should be rendered on a special verdict.” This ease carefully distinguishes between those cases where omission to use the senses is negligence and where it is not. If the using the eyes and ears could not have prevented the collision, an omission to use them is not contributory negligeuce. If the circumstances were such as would have excused a person of ordinary prudence from looking and listening, then there is no negligence.
The proposition is further illustrated by the case of the Bellefontaine Railroad Co. v. Snyder, 24 Ohio St. 670, the syllabus of which.is, “It is the duty of a person approaching, crossing, or standing upon a railroad track, where cars are being run, to look out for approaching-cars, and if he fails to do so, he is prima facie guilty of such negligence as will prevent his recovery for injuries occasioned to him, while so crossing or standing upon the track, by the mere *75 carelessness, negligence, or nnskillfnlness of the company, not amounting to willfulness on their part; and this presumption of negligence can only be rebutted by facts or circumstances showing that it was not reasonably practicable to make or keep such lookout, or such as would ordinarily induce persons of common prudence to omit that precaution.”
In the case before us, the evidence is clear that Rathgeb might have seen the train, by simply using his eyes, in time to have prevented the collision. There were none of the circumstances referred to in the Crawford and Snyder cases, which absolved him from the duty of exercising his vision. There was no reason why lie should not have looked, and had he done so he would not have been hurt.
A case of contributory negligence was decided by the Supreme Court of the United States, October term, 1877. The Balt. & Pot. R. R. v. Jones, Weekly Cin. L. Bulletin, Jan. 7, 1878. Jones ivas a laborer in the employ of the company. The men were in the habit of riding to and fro from their work. A locomotive and box car was used for this purpose, but the men, or some of them, often jumped on the pilot and rode there. Jones had been cautioned against this and forbidden to do so, but upon the day when he was hurt, he disobeyed the injunction and jumped on the pilot. By a collision he was hurt. The court was asked to charge as follows: “If the jury find from the evidence that the plaintiff knew the box car was the proper place for him, and if he knew his position on the pilot of the engine was a dangerous one, then they will render a verdict for the defendant, whether they find that its agents allowed the plaintiff to ride on the pilot or not.” This charge was refused. Mr. Justice Swayne says : “ The plaintiff was not entitled to recover. It follows that the court erred in refusing the instruction asked on this subject. If the company' had prayed the court to direct the jury to return a verdict for the defendant, it would have been the duty of the court to give such directions, and error to refuse.”
In the case before us the negligence of plaintiff was such *76 that the jury should have been told that it barred his right of recovery.

Judgment reversed.